UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CRYSTAL ERVIN, | No. 2:20-cv-1460-KJN |
| Plaintiff, | ORDER |
| v. | (ECF Nos. 17, 18.) |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

Plaintiff seeks judicial review of a final decision by the Commissioner of Social Security denying her application for Disability Insurance Benefits and Supplemental Security Income.[1] In her summary judgment motion, plaintiff contends the Administrative Law Judge erred in: disregarding plaintiff's skin condition at step two; rejecting a treating psychiatrist's opinion; resolving her subjective symptom testimony; dismissing third party testimony; and justifying the RFC. Plaintiff seeks a remand for a grant of benefits. The Commissioner opposed, and filed a cross-motion for summary judgment, and seeks affirmance.

For the reasons that follow, the court DENIES plaintiff's motion for summary judgment, GRANTS the Commissioner's cross-motion, and AFFIRMS the final decision of the Commissioner.

---

[1] This action was referred to the undersigned pursuant to Local Rule 302(c)(15), and both parties consented to proceed before a Magistrate Judge for all purposes. (ECF Nos. 6, 9, 14.)

1

I.  **RELEVANT LAW**

The Social Security Act provides for benefits for qualifying individuals unable to "engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment." 42 U.S.C. §§ 423(d)(1)(a); 1382c(a)(3). An ALJ is to follow a five-step sequence when evaluating an applicant's eligibility, summarized as follows:

> **Step one**: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
> **Step two**: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
> **Step three**: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
> **Step four**: Is the claimant capable of performing past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
> **Step five**: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995); see also 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4). The burden of proof rests with the claimant through step four, and with the Commissioner at step five. Ford v. Saul, 950 F.3d 1141, 1148 (9th Cir. 2020).

A district court may reverse the agency's decision only if the ALJ's decision "contains legal error or is not supported by substantial evidence." Id. at 1154. Substantial evidence is more than a mere scintilla, but less than a preponderance, i.e., "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. The court reviews the record as a whole, including evidence that both supports and detracts from the ALJ's conclusion. Luther v. Berryhill, 891 F.3d 872, 875 (9th Cir. 2018). However, the court may review only the reasons provided by the ALJ in the decision and may not affirm on a ground upon which the ALJ did not rely. Id. "[T]he ALJ must provide sufficient reasoning that allows [the court] to perform [a] review." Lambert v. Saul, 980 F.3d 1266, 1277 (9th Cir. 2020).

The ALJ "is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Ford, 950 F.3d at 1154. Where evidence is susceptible to more than one rational interpretation, the ALJ's conclusion "must be upheld." Id. Further, the court may not reverse the ALJ's decision on account of harmless error. Id.

2

## II.	BACKGROUND AND ALJ'S FIVE–STEP ANALYSIS

In 2014, plaintiff applied for Disability Insurance Benefits and Supplemental Security Income, alleging an onset date of August 1, 2013.  (Administrative Transcript ("AT") 174-75; 180-81.)  Plaintiff claimed disability due to "Borderline Lupus; Rheumatoid Arthritis; Osteoarthritis; Anxiety; Panic Attacks; Hypertension; Hypermobility Syndrome Depression; Joint, Shoulder, Neck, Wrist, Knee, Hips Pain; Pulled IT Band; Torn Meniscus."  (See AT 66-67.)  Plaintiff's applications were denied initially and upon reconsideration, and she sought review with an ALJ.  (AT 90-91; 114-15; 128.)  At a January 2017 hearing, plaintiff testified about her conditions, and a vocational expert ("VE") testified regarding the ability of a person with similar impairments to perform various jobs.  (AT 35-65.)  An ALJ determined plaintiff was not disabled, finding she could do a full range of work with certain physical and mental limitations.  (AT 15-27.)

In 2018, plaintiff appealed to this court, arguing that the ALJ erred in failing to include limitations in the RFC due to her hypermobility syndrome, eczema, and obesity; weighing the medical evidence regarding plaintiff's alleged mental impairments; and discounting testimony from plaintiff and three lay witnesses, and ignoring photographs.  (See AT 587.)  A magistrate judge of this court remanded for further proceedings, finding the ALJ failed to explain why an examining psychiatrist's opinion was credited over that of plaintiff's treating psychiatrist; the court declined to address plaintiff's other arguments.  (AT 584-91.)  On remand, an ALJ held another hearing on March 24, 2020, where plaintiff and a VE again testified.  (AT 509-42.)

On April 17, 2020, the ALJ issued a decision determining plaintiff was not disabled.  (AT 487-500.)  As an initial matter, the ALJ determined plaintiff met insured status through December 31, 2019.  (AT 490.)  At step one, the ALJ concluded plaintiff had not engaged in substantial gainful activity since August 1, 2013.  (Id.)  At step two, the ALJ determined plaintiff had the following severe impairments:  benign hypermobility syndrome; anxiety disorder; obesity; mood disorder; cannabis dependence; and lumbar degenerative disc disease.  (Id.)  Relevant here, the ALJ found plaintiff's reported eczema non-severe because it was effectively controlled with topical creams and did not persistently outbreak.  (Id.)

3

At step three, the ALJ determined plaintiff's impairments did not meet or medically equal the severity of an impairment listed in Appendix 1.  (Id., citing 20 C.F.R. Part 404, Subpart P, Appendix 1).  Regarding the benign hypermobility syndrome, the ALJ found plaintiff lacked evidence showing "neurological changes, motor loss, major peripheral weight-bearing joint or major peripheral upper extremity joint dysfunction as required by the Listings."  (AT 491.)  For plaintiff's mental impairments, the ALJ considered Listing 12.04 for "depressive, bipolar, and related disorders," and 12.06 for "anxiety and obsessive-compulsive disorders," and considered both Paragraphs B and C.  (AT 491-92.)  Under Paragraph B, the ALJ found moderate limitations in the information, interaction and concentration categories, and mild limitations in the adaptation category.  (Id.)  For support, the ALJ cited a 2014 examining opinion of Dr. Torrez, plaintiff's daily activities, and under 'adapting/managing oneself,' plaintiff's medication regimen.  (Id.)

The ALJ then found plaintiff had the residual functional capacity ("RFC") to perform a light work, except she "is able to occasionally stoop, bend and crouch[;] is to avoid concentrated exposure to fumes, odors, dusts, chemicals and environments with poor ventilation[;] is able to perform simple tasks that involve occasional public contact, but no fast-paced work."  (AT 492.)  In crafting this RFC, the ALJ stated she considered plaintiff's intense, persistent, and limiting symptoms alongside the medical evidence and opinions of the medical sources.  (AT 493.)  The ALJ stated this included plaintiff's symptom and daily-activities testimony (AT 493), medical records regarding plaintiff's benign hypermobility syndrome, eczema, anxiety and depression (AT 494-96), three third-party statements (AT 497), photos from plaintiff herself (AT 496), and the medical opinions of consultative examining psychiatrist Dr. Torrez, treating psychiatrist Dr. Tubis, and the four State Agency medical consultants (AT 496-97).  The ALJ accorded "significant weight" to Dr. Torrez's opinion on plaintiff's mental limitations because of the doctor's assessment of plaintiff's drug use, consideration of daily activities, and consistency with and support in the medical evidence.  (Id.)  "Little weight" was assigned to Dr. Tubis's January 2017 mental-limitations opinion because the ALJ found it focused on plaintiff's physical symptoms, was contrary to her daily activities, failed to account for her stabilized depression and anxiety, and failed to address her drug and alcohol use.  (AT 498.)  Further, "no weight" was

given Dr. Tubis's March 2017 opinion because of plaintiff's stabilized mental condition and lack of evidence regarding her hands.  (Id.)  Finally, the ALJ assigned "little weight" to all four State Agency opinions (each opining that all of plaintiff's alleged physical and mental impairments were non-severe due to a lack of evidence) because they were issued in 2014 and the medical evidence since then "clearly demonstrates more than a minimal effect on functionality."  (AT 497.)  The ALJ concluded plaintiff was incapable of performing past relevant work, but found there were jobs in the national economy she could perform, such as a router, storage facility clerk, and routing clerk, and was therefore not disabled.  (AT 498-500.)

Plaintiff then filed this action requesting judicial review of the Commissioner's final decision; the parties filed cross-motions for summary judgment.  (ECF Nos. 1, 17, 18, 21.)

**III.     ISSUES PRESENTED**

Plaintiff contends the ALJ erred in:  (A) finding her skin condition non-severe at step two; (B) rejecting her treating psychiatrist's opinions; (C) resolving her subjective symptom testimony; (D) dismissing third party testimony; and (E) otherwise justifying the RFC.  Plaintiff seeks a remand for a grant of benefits, citing the fact that this case has been remanded for further proceedings once before.  (ECF Nos. 17, 21.)

The Commissioner disagrees, arguing the ALJ properly:  (A) resolved plaintiff's skin impairments at step two; (B) rejected portions of the treating physician's opinion; (C) rejected the more severe aspects of plaintiff's subjective symptom testimony; (D) considered the lay witness statements; and (E) formulated the RFC.  Thus, the Commissioner contends the decision as a whole is supported by substantial evidence and should result in affirmance.  (ECF No. 18.)

**IV.     DISCUSSION**

**A. The ALJ adequately explained why plaintiff's skin condition was deemed non-severe.**

**Legal Standards at Step Two**

At step two, the ALJ is to distinguish between those impairments that are "severe" and "non-severe."  See 20 C.F.R. § 404.1520.  A "severe" impairment is one that significantly limits the physical or mental ability to perform basic work activities.  Id.  "An impairment or combination of impairments may be found 'not severe' only if the evidence establishes a slight

abnormality that has no more than a minimal effect on an individual's ability to work." Webb v. Barnhart, 433 F.3d 683, 686 (9th Cir. 2005).  When asserting a condition has more than a minimal effect, the plaintiff must provide medical evidence beyond a mere diagnosis and cannot rely solely on symptom testimony.  20 C.F.R. 404.1529(a).  However, the step two assessment is a "de minimus screening device to dispose of groundless claims," and the ALJ's conclusion must be supported by the medical evidence in the record.  Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996).  Even when evidence in the record is "susceptible to more than one rational interpretation," the ALJ's findings are determinative when "supported by inferences reasonably drawn from the record."  Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012).

**Analysis**

Here, plaintiff has reported having eczema since 2014, and in her first set of proceedings before the ALJ, this condition was deemed severe.  (See AT 21.)  In the current proceedings, however, the ALJ concluded the condition was non-severe because it "is effectively controlled with the use of topical creams" and because plaintiff "has experienced no persistent outbreaks." (AT 490.)  Plaintiff contends this rationale is insufficient, given the lack of citation after this sentence, the ALJ's acknowledgement that plaintiff was hospitalized and had a wound vac removed in early 2019 (see AT 496, 787), and the substance of her own testimony about her conditions (AT 520-21).  On the whole, however, the court finds the ALJ's rationale here able to be discerned.  Molina, 674 F.3d at 1121 ("Even when an agency explains its decision with less than ideal clarity, we must uphold it if the agency's path may reasonably be discerned.").

The ALJ's conclusion appears to rest on the fact that in the years leading up to the decision, plaintiff had little evidence of "persistent" outbreaks beyond her own testimony, a hospitalization in early 2019, and management of the condition with topical creams.  The regulations and case law do not permit a finding of disability solely on the basis of subjective symptom testimony.  See 20 C.F.R § 404.1529(a); Treichler v. Comm'r, 775 F.3d 1090, 1106 (9th Cir. 2014).  True, medical evidence does exist here, but as plaintiff acknowledges, the record lacks treatment records between 2013-2018 and contains a gap between 2018-19.  Ford, 950 F.3d at 1148 (noting the burden of proof rests with plaintiff through step four).

Turning to the evidence concerning her skin condition that was in the record, the ALJ primarily cited to records from early in the proceedings noting her condition as "skin picking" that was treatable with topical creams. (See AT 495-96, citing AT 291, 313, 376-87, 758, 887.) The ALJ noted plaintiff's testimony regarding a history of methamphetamine use earlier in these proceedings, but found no limitations in the last several years from any such drug use. (AT 492 citing AT 402.) For more recent records, the ALJ cited a 2019 hospital stay, noting not only the wound vac removal but, critically, that these issues had subsided after treatment. (AT 496, citing AT 792, 890.) The ALJ acknowledged plaintiff's photos, but found the whole of the record outweighed them. (AT 496.) Thus, while an ideal analysis on plaintiff's skin condition would have been contained in the step-two paragraph at AT 490, an examination of the entire decision indicates the ALJ performed her duties in resolving how this condition affects the outcome. Gonzalez v. Sullivan, 914 F.2d 1197, 1201 (9th Cir. 1991) ("To require [ALJs] to improve their literary skills in this instance would unduly burden the . . . process.").

Given the citations contained throughout the decision, the court finds no error in the ALJ's treatment of plaintiff's eczema as a non-severe condition at step two. Smolen, 80 F.3d at (noting no error where an ALJ's conclusion is supported by the medical evidence in the record); Molina, 674 F.3d at 1111 (reminding that an ALJ's findings are determinative when "supported by inferences reasonably drawn from the record").

**B. The ALJ provided specific and legitimate reasons for discounting the treating psychiatrist's opinions concerning plaintiff's mental impairments.**
**Legal Standards**

For cases filed before March 2017, generally speaking, the ALJ is required to consider a host of factors in deciding the weight given to any medical opinion. These include the examining relationship, the length of the treatment relationship and frequency of examination, the nature and extent of the treatment relationship, supportability, consistency with the record, specialization, and any other factors deemed relevant. 20 C.F.R. § 404.1527(c)(1)-(6).

In order to evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether: (1) contradictory opinions are in /the record;

7

and (2) clinical findings support the opinions. Lester, 81 F.3d at 831. To reject the contradicted opinion of a treating or examining doctor, the ALJ must provide "specific and legitimate" reasons. Id. at 830. An ALJ provides specific and legitimate reasons by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating [an] interpretation thereof, and making findings." Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 2011).

**Analysis**

Here, plaintiff's argument focuses on the ALJ's treatment of her treating psychiatrist's opinions from January and March of 2017. The January opinion from Dr. Tubis stated plaintiff was "basically unable to work in any occupation due to fatigue, PTSD from loss of a business, financial reversal, anxiety, depression and pain . . . ." (AT 437.) Dr. Tubis noted plaintiff's use of anti-depressants, and opined plaintiff had "very limited ability to deal with the mental stress of employment." (Id.) Dr. Tubis's March submission included a mental impairment questionnaire, which assessed a GAF score of 50 (AT 478), found plaintiff had fair/poor/no ability to function in 24 separate areas (AT 481-82), and found she had extreme limitations in her social abilities alongside frequent limitations in her ability to concentrate, persist and maintain pace (AT 483). The ALJ assigned "little weight" to the first opinion, finding it was contrary to plaintiff's daily activities, failed to account for her stabilized depression and anxiety, and failed to address her drug and alcohol use. (AT 498.) Further, the ALJ assigned "no weight" to the second opinion due to plaintiff's stabilized mental condition. (Id.)

Plaintiff's argument here appears to focus primarily on the fact that the ALJ preferred the opinion of Dr. Torrez (a consultative examiner) over Dr. Tubis's opinion on her mental impairments, arguing the ALJ failed to provide specific and legitimate reasons to do so. The ALJ accorded "significant weight" to Dr. Torrez's opinion on plaintiff's mental limitations, citing the examining psychiatrist's consideration of plaintiff's drug use and daily activities, as well as the opinion's consistency with and support in the medical evidence. (Id.) Dr. Torrez found plaintiff moderately limited in her ability to concentrate; mild-to-moderately limited in her ability to withstand stress of a routine workday and adapt to changes in the workplace; mildly limited in her ability to maintain pace and persistence for complex tasks, adapt to changes in the workplace, and

1  interact with co-workers, supervisors, and the public; and otherwise not limited.  (AT 397-98.)
2  The ALJ relied heavily on this opinion, citing it when assessing moderate limitations in each of
3  the four paragraph B areas.  (AT 491-92.)

4  Regarding the ALJ's rationale for discounting Dr. Tubis's opinions on plaintiff's mental
5  conditions, the court finds no error.  For each of Dr. Tubis's contentions, the ALJ offered multiple
6  reasons for discounting the extreme and frequent limitations he opined.  However, consistent
7  between them was the ALJ's finding that plaintiff's depression and anxiety were stable on
8  medication and that she was "doing well."  (AT 498.)  The ALJ cited medical records from across
9  plaintiff's medical history demonstrating this fact, both in the specific paragraph discounting Dr.
10 Tubis's opinion (AT 498, citing, e.g., AT 821 and 850 (September 2019 and March 2018 reports
11 noting plaintiff's anxiety and depression were controlled with medications)), and in the medical
12 history earlier in the decision (see AT 494, citing AT 318 (August 2012 report noting significant
13 improvement with medications, fewer panic attacks); AT 495, citing, e.g., AT 327 (August 2013
14 report noting plaintiff's anxiety was stable with medications), AT 296 (April 2014 report noting
15 slight anxiety but otherwise normal behavior); AT 788 (negative psych findings for anxiety,
16 depression, and insomnia).)  Lack of support and consistency are specific and legitimate reasons
17 to discount a medical opinion.  See Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999)
18 (treating physician's minimally supported opinion properly rejected); Andrews v. Shalala, 53
19 F.3d 1035, 1041 (9th Cir. 1995) (noting that inconsistency with independent clinical findings in
20 the record is a specific and legitimate reason to reject a contradicted opinion of a treating
21 physician).  Plaintiff argues a condition can be stable and still be disabling, but in this instance,
22 the thrust of the ALJ's reasoning was that plaintiff's mental conditions were both stable *and* well-
23 managed with medication.  Rollins v. Massanari, 261 F.3d 853, 856 (9th Cir. 2001) (noting that
24 an ALJ may discount a physician's extreme opinion that is inconsistent with the conservative
25 nature of the claimant's treatment).  Thus, regardless of the substance of plaintiff's remaining
26 arguments about the ALJ's treatment of Dr. Tubis's opinions, the court finds no error in the
27 ALJ's resolution of plaintiff's mental impairments.
28 ///

**C. The ALJ appropriately rejected the severe aspects of plaintiff's symptom testimony.**

**Legal Standards**

A claimant's statements of subjective symptoms alone are insufficient grounds to establish disability. 20 C.F.R § 404.1529(a). If an ALJ was required to believe every allegation of pain or impairment, disability benefits would run afoul of the Social Security Act and its purpose. See Treichler, 775 F.3d at 1106. In evaluating the extent to which an ALJ must credit the claimant's report of their symptoms, the Ninth Circuit has stated:

> First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. In this analysis, the claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom. Nor must a claimant produce objective medical evidence of the pain or fatigue itself, or the severity thereof.
> If the claimant satisfies the first step of this analysis, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so. This is not an easy requirement to meet: The clear and convincing standard is the most demanding required in Social Security cases.

Revels v. Berryhill, 874 F.3d 648, 655 (9th Cir. 2017) (quoting Garrison, 759 F.3d at 1014-15).

The ALJ's reasons for discounting or rejecting a claimant's subjective symptom testimony must be "sufficiently specific to allow a reviewing court to conclude the adjudicator . . . did not arbitrarily discredit a claimant's testimony." Brown-Hunter v. Colvin, 806 F.3d 487, 483 (9th Cir. 2015) (quoting Bunnell v. Sullivan, 947 F.2d 341, 345-46 (9th Cir. 1991)). Examples of "specific, clear and convincing reasons" for discounting or rejecting a claimant's subjective symptom testimony include: the effectiveness of or noncompliance with a prescribed regime of medical treatment, prescription of conservative treatment, inconsistencies between a claimant's testimony and conduct (including daily activities), and whether the alleged symptoms are consistent with the medical evidence of record. See Tommasetti, 533 F.3d at 1040; Lingenfelter v. Astrue, 504 F.3d 1028, 1040 (9th Cir. 2007). A lack of corroborating, objective medical evidence alone is insufficient grounds for an ALJ to discount a claimant's subjective symptoms; however, it is a factor the ALJ may consider. See Rollins, 261 F.3d at 857 (citing 20 C.F.R § 404.1529(c)(2)).

**Analysis**

Here, plaintiff disputes that the ALJ actually discredited the more severe aspects of her symptom testimony, arguing the decision failed to identify what testimony was not credible and what evidence undermined it. Plaintiff hones in on the text of the decision at AT 494-96, where she contends the ALJ merely interspersed conclusory assertions into the summary of her conditions, vaguely summarized the medical evidence, and restated conclusions from the preceding paragraphs. Thus, plaintiff argues the ALJ did not properly evaluate her credibility, deeming the decision "indiscernible." However, plaintiff also argues the ALJ appears only to rely on a lack of medical evidence in discrediting her testimony. The court finds the ALJ's resolution of plaintiff's testimony not only discernible but also legally sufficient.

Regarding plaintiff's physical conditions, the ALJ summarized plaintiff's testimony, specifically noting her pain and fatigue contentions associated with her benign hypermobility syndrome (including in her hips, back, ankles, fingers, knees, and shoulders) that affect her stated inability to sit, stand, and walk; the effect of her skin condition on her stated inability to sleep, walk, write, keyboard, and perform daily activities; and her difficulties due to her back pain. (AT 493.) As to the mental conditions, the ALJ noted plaintiff's testimony about how her anxiety and depression affects her ability to sleep and leave the house as well as her testimony concerning her panic attacks. (Id.) The ALJ then provides a conclusion for each of these issues on the next page of the decision, noting generally the evidence concerning her hypermobility syndrome and eczema and the fact that her conditions can be controlled with prescribed therapy. (AT 494.) The ALJ also generally concluded the effects of plaintiff's anxiety and depression did not appear to be severe as plaintiff contended, noting the results evident in some of her medical records and opinion evidence and the effectiveness of medication. (Id.)

What follows is the ALJ's recounting of the medical and opinion evidence concerning each of these opinions. (AT 494-96.) This includes citations to medical records stretching from 2012 (AT 494, citing Ex. 2F) to 2014 (AT 495, citing Ex. 1F) that recorded the effects of plaintiff's hypermobility syndrome, including that plaintiff's pain appeared controllable with juicing, exercise, heading pads, spas, bandaging of joints, massage therapy, weight loss, physical

therapy, and exercise.  This also includes similar citations and findings concerning plaintiff's skin condition (AT 495-96, citing Ex. 1F, 4F, 7F, and 16F) and back pain (AT 496, citing Ex. 14F). Also throughout this section is detailed the evidence concerning plaintiff's anxiety and depression, with similar citations to the record from 2012-14 (AT 494-95, citing Exs. 1F, 2F, and 11F) and 2018-2019 (AT 495-96, citing Exs. 8F, 14F, 15F, and 17F).

Taken together, the court reads the ALJ's decision as one discounting the more severe aspects of plaintiff's physical and mental symptom testimony due to conflicting evidence in the medical record, the use of conservative treatment, and the fact that these impairments could be controlled with medication.  These are legally sufficient reasons for the ALJ's decision on plaintiff's symptom testimony.  See Rollins, 261 F.3d 857 (finding that medical evidence can be considered if paired with other reasons); Parra v. Astrue, 481 F.3d 742, 751 (9th Cir. 2007) ("We have previously indicated that evidence of conservative treatment is sufficient to discount a claimant's testimony regarding severity of an impairment"); Warre v. Comm'r, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling").  Further, given the analysis, the court is satisfied the ALJ "did not arbitrarily discredit a claimant's testimony." Brown-Hunter, 806 F.3d at 483.  Thus, the court rejects the point of error concerning the ALJ's resolution of plaintiff's subjective symptom testimony.

**D. The ALJ did not commit harmful error regarding the third-party statements.**

"[C]ompetent lay witness testimony cannot be disregarded without comment." Molina, 674 F.3d at 1114 (internal quotation and citation omitted).  "[I]n order to discount competent lay witness testimony, the ALJ must give reasons that are germane to each witness." Id.  "Further, the reasons 'germane to each witness' must be specific." Bruce v. Astrue, 557 F.3d 1113, 1115 (9th Cir. 2009).

Contradictory evidence in the record is a germane reason for rejecting lay testimony.  See Lewis v. Apfel, 236 F.3d 503, 512 (9th Cir. 2001).  Additionally, when the ALJ provides clear and convincing reasons for discounting the claimant's subjective complaints, and third-party witness testimony is similar to claimant's subjective complaints, the ALJ also provides germane reasons for rejecting the third-party witness testimony. See Valentine v. Comm'r, 574 F.3d 685,

694 (9th Cir. 2009) (the ALJ provided germane reasons for rejecting third-party witness testimony similar to claimant's subjective testimony where the ALJ provided clear and convincing reasons for rejecting claimant's subjective testimony).

Here, the ALJ noted that she considered the observations of plaintiff's neighbor, her daughter, and a friend, but found the statements did not support a conclusion plaintiff was precluded from all work. (AT 498, citing AT 237, 238, and 239-40.) Plaintiff contends this rationale is insufficient under the pre-2017 regulations. The court agrees that the ALJ could have provided a much more thorough explanation for why these statements were rejected. However, the court finds any such error harmless, as the ALJ sufficiently discounted similar statements from plaintiff herself and the court has just concluded there was no error with that portion of the decision. See Valentine, 574 F.3d at 694.

**E. The court finds no other error in the ALJ's formulation of the RFC.**

The regulations define the residual functional capacity ("RFC") as "the most you can still do despite your limitations." 20 C.F.R. § 404.1545(a). In determining plaintiff's RFC, an ALJ is to consider the objective medical evidence and other evidence. See Id. at sub. (b)-(d) (concerning the assessment of physical, mental, and other abilities); see also 20 C.F.R. § 404.1529 (governing how symptoms are to be evaluated). The ALJ is responsible for assessing the RFC at the hearing stage. 20 C.F.R. § 404.1546(c). An ALJ may synthesize and translate assessed limitations into an RFC assessment without repeating each functional limitation verbatim in the RFC assessment. Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1173-74 (9th Cir. 2008).

Plaintiff contends "there is no explanation for the residual functional capacity," specifically arguing it is unclear how Dr. Torrez's "mild to moderate" limitations became "simple tasks that involve occasional public contact but no fast-paced work," how the evidence of plaintiff's DDD translated into light work, and how the intermittent muscle pain from her hypermobility syndrome is incorporated. Plaintiff also restates her challenge concerning the ALJ rejection of Dr. Tubis's mental opinion, plaintiff's subjective symptom testimony, her allegations concerning her skin condition, and the third-party statements.

///

Reading the decision as a whole, the court reads it as one where the ALJ relied on the medical evidence in the record and, for plaintiff's mental conditions, Dr. Torrez's opinion, in formulating the RFC.  (See AT 494-98.)  With each limitation, the ALJ provided citation to the record from plaintiff's longitudinal medical records, which constitutes substantial evidence.  Ford, 950 F.3d at 1154 (noting that substantial evidence is more than a mere scintilla, but less than a preponderance, i.e., "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.").  Further, courts have found no legal error in similar translations of a doctor's mental limitations into the RFC.  See, e.g., Shaibi v Berryhill, 883 F.3d 1102, 1107 (9th Cir. 2017) (holding the ALJ adequately accounted for doctor's opinion about claimant's "moderate" social limitations by limiting him to "simple routine tasks in a non-public setting, with 'occasional' interaction with co-workers").

The ALJ accounted for all conditions and recognized relevant medical records in resolving her alleged physical limitations corresponding with light work.  (See AT 494, citing Ex. 2F (records from August 2012 showing normal gait); AT 495, citing Ex. 11F (evidence showing plaintiff could work when seated and when paired with rehab); Ex. 4F (August 2013 records showing normal gait, mild lower extremity edema, and moving extremities well); AT 496, citing Ex. 14F (noting mild findings regarding plaintiff's DDD).  As to Dr. Tubis's opinions on plaintiff's physical impairments, the ALJ was authorized to give this less weight given that it was outside the doctor's specialty and given its inconsistency with the medical record already cited.  See 20 C.F.R. § 404.1527(c)(5) ("We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist"); Andrews, 53 F.3d at 1041 (inconsistency).  To the extent the ALJ did not discuss plaintiff's physical conditions as they existed between 2014 and 2019, plaintiff recognizes the gap in records.  See Ford, 950 F.3d 1141, 1148 (9th Cir. 2020) (reminding that the burden of proof rests with the claimant through step four).

As to plaintiff's arguments in this last section concerning the challenges already resolved above (step-two eczema, Dr. Tubis's mental opinions, plaintiff's testimony, and the third-party statements), the court will not repeat the analysis here.  Rather, the court simply notes it has

rejected many of plaintiff's challenges, and those arguments do not alter the court's findings on the ALJ's RFC assessment.

## V.     CONCLUSION

Finally, the court notes plaintiff's briefing contains a number of arguments interspersed throughout as to the quality of the ALJ's decision. (See, e.g., ECF No. 17 at 15:5 (noting the ALJ's apparent misuse of the word "all" in contradiction to other evidence noted by the ALJ).) For clarity, the court constrained its analysis to each major challenge in each section. The court finds no error in any remaining argument raised by plaintiff in her briefing, as the court has been able to perform a review and understand the ALJ's rationale. Lambert, 980 F.3d at 1277; see also T-Mobile South, LLC v. City of Roswell, Ga., 135 S. Ct. 808, 815 (2015) (recognizing in an administrative proceeding, an agency's reasons need not be "elaborate or even sophisticated, but rather . . . simply clear enough to enable judicial review."); Magallanes, 881 F.2d at 755 ("[A] reviewing court [is] not deprived of [its] faculties for drawing specific and legitimate inferences from the ALJ's opinion.").

Beyond plaintiff's challenges, the court finds that the ALJ's decision otherwise supported by substantial evidence in the record as a whole. Ford, 950 F.3d at 1148 (noting that a district court may reverse only if the ALJ's decision "contains legal error or is not supported by substantial evidence").

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 17) is DENIED;
2. The Commissioner's cross-motion (ECF No. 18) is GRANTED;
3. The final decision of the Commissioner is AFFIRMED; and
4. The Clerk of Court is directed to CLOSE this case.

Dated: September 12, 2022

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

ervi.1460

15